**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | |
|---|---|
| **CALVIN DEWAYNE WELLS, BELINDA ANGLON WELLS, and KINDRYN MARIE WELLS**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**JOE MULHOLLAND** *in personal capacity and in his official capacity as District Attorney for the South Georgia Judicial Circuit,*<br><br>**Defendant.** | **Case No. _____**<br><br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF AND DAMAGES**

Plaintiffs Calvin Dewayne Wells, Belinda Anglon Wells, and Kindryn Marie Wells (collectively referred to as the "Plaintiffs") file this Complaint for declaratory and injunctive and damages relief against Defendant Joe Mulholland ("Mulholland") in his personal capacity and in his official capacity as District Attorney for the South Georgia Judicial Circuit.

## I.   BACKGROUND & INTRODUCTION

1.    Mulholland first convinced a Baker County, Georgia grand jury to indict Calvin and Belinda Wells on July 26, 2023, for unlawfully purchasing

regulated metals ("the July 2023 Indictment"). *See* **Ex. A**. More specifically, the July 2023 Indictment includes five counts alleging that Calvin and Belinda jointly and individually purchased unknown quantities of large appliances, iron, and mixed steel from unidentified sellers on five occasions during November and December of 2021 without maintaining records afterwards. *See id*. Three months later, and without dismissing the July 2023 Indictment, Mulholland again convinced a Baker County grand jury to indict Calvin and Belinda Wells a second time ("the October 2023 Indictment"). *See* **Ex. B**. The October 2023 Indictment retained the July Indictment's five counts while adding a sixth count for knowingly and willfully operating a "chop shop" between January 2020 and December 2021. See id.

2.    With the July 2023 and October 2023 Indictments pending, Calvin and Belinda Wells filed: (i) a Joint & General Special Demurrer to both Indictments (**Ex. C**); (ii) a Supplemental Brief in Support of the Joint & General Special Demurrer (**Ex. D**), (iii) a Motion to Dismiss the Indictments Due to Spoliation of Evidence (**Ex. E**), and (iv) a Plea In Bar and Motion to Quash the Indictments (**Ex. F**). Baker County Superior Court held a hearing to consider these filings on February 12, 2024. During that hearing, the Wells's daughter, Kindryn Marie Wells, provided sworn testimony regarding the spoliation issue because she was present when members of the Baker County Sheriff's Office seized evidence that the District Attorney's office later spoliated.

3. Calvin and Belinda Wells then filed a comprehensive post-hearing brief that summarized all of the relevant testimony. *See* **Ex. G**.

4. Remarkably, Mulholland pursued another substantially similar indictment on April 9, 2024, against Calvin, Belinda, and Kindryn Wells (the "April 2024 Indictment"). *See* **Ex. H**. The allegations in the April 9, 2024 Indictment were the same as the prior two indictments, other than to add Kindryn Wells as a co-Defendant.

5. Based on the foregoing, Plaintiffs have a good faith-basis to believe that this prosecution is: (i) retaliation for Plaintiffs' exercising their free-speech rights under the First Amendment to the Federal Constitutions, (ii) designed to intimidate Plaintiffs from further exercising their First Amendment rights, and (iii) a bad-faith attempt to harass Plaintiffs without any reasonable possibility of conviction.

6. Calvin and Belinda Wells also have a claim against Mulholland for breaching an implied contract for bailment when he lost or destroyed their video system, which he agreed to return and to preserve in the interim.

## II.   JURISDICTION & VENUE

7. Plaintiffs bring claims under the First and Fourteenth Amendments to the U.S. Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgment Act, 28 U.S.C. § 2201.

8.     This Court has federal question jurisdiction under 28 U.S.C. § 1331, civil rights jurisdiction under 28 U.S.C. § 1343, and supplemental jurisdiction under 28 U.S.C. § 1367(a).

9.     Furthermore, the Court has jurisdiction to enjoin criminal matters pending in state court under the harassment, bad-faith, and patently unconstitutional exceptions to *Younger v. Harris*, 401 U.S. 37 (1971).

10.    Venue lies in this Court under 28 U.S.C. § 1391(b)(2) because, as described below, the events giving rise to the claims in this action occurred in Baker County, Georgia, which is located within this Court's district and division.

## III.    PARTIES

11.    Joe Mulholland is, and has been at all times relevant to this lawsuit, the District Attorney for the South Georgia Judicial Circuit, responsible for prosecuting crimes committed in Baker County. Mulholland can be served at his place of employment, located at 114 South Broad Street, Bainbridge, Georgia 39817. Mulholland is sued in his personal and official capacities.

12.    Plaintiff Calvin Wells is an individual resident of Baker County, Georgia. He currently resides at 4017 Preston Road, Newton, Georgia 39870.

13.    Plaintiff Belinda Wells is an individual resident of Baker County, Georgia. She currently resides at 4017 Preston Rdoad, Newton, Georgia 39870.

14.    Plaintiff Kindryn Wells is an individual resident of Baker County, Georgia. She currently resides at 4017 Preston Road, Newton, Georgia 39870.

## IV.    STATEMENT OF FACTS

### A.    The July 2021 Seizure & Forfeiture

15.    On December 14, 2021, members of the Baker County Sheriff's Office and other law enforcement officers seized personal property located at 825 Patmos Milford Highway in Arlington, Georgia while executing search warrants. *See* **Ex. G** at 19–25. The seized personal property included various electronic devices and a video recording system. The State then filed a civil forfeiture complaint, and Calvin and Belinda Wells—along with their company, C&W Recycling and Farms, LLC— answered and moved to dismiss. The following day, on March 29, 2022, the State dismissed its Complaint in full.

### B.    The July 2023 Indictment

16.    Nearly a year after the State dismissed its forfeiture complaint, a Baker County grand jury returned a five-count indictment against Calvin and Belinda Wells on July 26, 2023. *See* **Ex. A**.

17.    The July 2023 Indictment consists of five, sentence-length paragraphs alleging that Calvin and Belinda Wells, as Secondary Metals Recyclers ("SMRs"),[1] jointly

---

[1] A "secondary metals recycler" is "any person who is engaged … in the business in this state of paying compensation for regulated metal property that has served its original economic purpose, whether or not engaged in the business of performing the manufacturing process by which regulated metal property is converted into raw

and individually "fail[ed] to maintain … legible record[s]" of certain transactions. *See id.* at pp. 1–3.

18.    More specifically, the July 2023 Indictment contends that Calvin and Belinda Wells purchased unknown quantities of "large appliances,"[2] "iron," and "mixed steel" from unidentified sellers on five occasions during November and December of 2021 without maintaining records afterwards. *See id.*

19.    The July 2023 Indictment, however, does not cite a single statute. It also fails to allege any essential element of any crime, including *mens rea*.

20.    Despite its defects, the July 2023 Indictment remains pending against Calvin and Belinda Wells.

### C.    The October 2023 Indictment

21.    With the July 2023 Indictment still pending, a Baker County grand jury returned a six-count indictment against Calvin and Belinda Wells on October 2, 2023. *See* **Ex. B**.

22.    The October 2023 Indictment is identical to the July 2023 Indictment in all respects except it also alleges that that Calvin and Belinda Wells "knowingly

---

material products consisting of prepared grades and having an existing or potential economic value." O.C.G.A. § 10-1-350(16).

[2] The only metals regulated by the State are "item[s] composed primarily of any ferrous metals or nonferrous metals," including "aluminum property, copper property, and catalytic converters." O.C.G.A. § 10-1-350(15). So, failing to maintain post-purchase records of undefined "large appliances" is not prohibited.

and willfully operate[d] a chop shop" between January 2020 and December 2021. *See id.* at 1.

23.    In operating this alleged "chop shop," Calvin and Belinda Wells supposedly "scrapp[ed] and destroy[ed] … unlawfully purchased vehicles without … obtaining a salvage title" while also failing "to maintain record of purchase of the said vehicles and report the purchase of said vehicles to the appropriate state approved and required reporting agency[.]" *Id.*

24.    The October 2023 Indictment does not, however, identify any particular vehicles, sellers, transaction dates, or even an overall quantity of vehicles.

25.    Though a cover sheet cites O.C.G.A. § 10-1-359.1 with respect to Counts 2–6 and O.C.G.A. § 16-8-83 in reference to Count 1, the counts themselves are silent as to any statutory provisions.

26.    Section 10-1-359.1 is, however, captioned "Registration of secondary metals recycler"—and the only crime that one could commit under that provision is "to purchase regulated metal property in any amount without being registered." O.C.G.A. § 10-1-359.1(a).

27.    The October 2023 Indictment therefore improperly relies on *post-purchase*, recordkeeping allegations to charge Calvin and Belinda Wells with violations of a *pre-purchase*, registration provision. In other words, the State charged Calvin and Belinda Wells under the wrong statute.

28.     The cover sheet's citation to O.C.G.A. § 16-8-83 is also insufficient as a matter of law because Calvin and Belinda Wells must guess which of that statute's 11 sub-sections are at issue based on a single-sentence allegation.

29.     Like its July 2023 counterpart, the October 2023 Indictment is still pending against Calvin and Belinda Wells, despite its numerous defects.

**D.      Calvin and Belinda Wells filed a number of motions to dismiss the July and October 2023 Indictments.**

30.     With the flaws above in mind, Calvin and Belinda Wells filed a Joint General and Special Demurrer to the July and October 2023 Indictments on November, 27 2023. *See* **Ex. C**.

31.     That same day, Calvin and Belinda Wells also moved to dismiss the July and October 2023 Indictments due to the State's spoliation of evidence. *See* **Ex. E**.

32.     The motion to dismiss argued that: (i) the State seized a video recording system from C&W Recycling in 2021, (ii) the system recorded the prior 60 days' worth of footage at C&W Recycling on three separate cameras, (iii) Calvin and Belinda Wells demanded the return of this evidence in early 2022, (iv) Mulholland spoliated (i.e. lost) the system sometime in 2023, and (v) the video system would have contained footage that would have been exculpatory. *See id*.

8

33.     Later, in early February 2024, Calvin and Belinda Wells filed a Supplemental Brief in support of their Joint General and Special Demurrer. *See* **Ex. D**.

34.     Around the same time, Calvin and Belinda Wells also filed a plea in bar and motion to quash the July and October 2023 Indictments. *See* **Ex. F**.

35.     That plea in bar and motion to quash argued that the State had failed to present any competent evidence to either grand jury. And, when the grand juries voted on the July and October 2023 Indictments, they improperly undertook a single vote to simultaneously indict both Calvin and Belinda on all counts. *See id*.

### E.     The February 2024 Hearing

36.     The Baker County Superior Court then held an evidentiary hearing on February 12, 2024, to consider the pending filings.

37.     At the February 12, 2024 hearing, Kindryn Wells—a former employee of C&W and the daughter of Calvin and Belinda Wells—testified that she was working at C&W Recycling when the Sheriff seized Calvin and Belinda Wells's personal property. *See* **Ex. G** at 130–31 (73:23-74:7). Kindryn testified that there was a video system at C&W, and that it was working and functioning at the time of the seizure. *See id*. at 76:16-24. She further testified that the video system was ultimately seized from C&W by the Sheriff's Office. *See id*. at 134, 77:8-9. Kindryn

further testified that the seized recording device stored roughly 60 days' worth of footage on it from the cameras at C&W. *See id*. at 134–35, 77:13-78:4.

38.    Regarding the cameras themselves, Kindryn stated that one of the three cameras was focused on a small scale that captured the purchase and weighing of metals and appliances purchased by C&W. *See id*. at 135, 78:11-16. The second camera was focused on a large scale, which captured larger weigh-ins and purchases such as loads of scrap. See id. at 78:17-25. And, the third camera was focused on customers coming and going from C&W. *See id*. at 136, 79:1-6. Kindryn testified that the cameras together captured all of the scrap metal and other items purchased by C&W during the 60 days prior to the seizure. *See id*. at 136, 79:7-13. This would include recording all transactions at issue in the July and October 2023 Indictments. *See* **Exs. A** and **B** (alleging the transactions at issue occurred between November 18, 2021 and December 10, 2021).

39.    Kindryn's testimony also indicated that the cameras would have captured the faces of the customers coming and going and whether or not the customers had paperwork being issued to them. *See* **Ex. G** at 136, 79:17-80:3. She also testified that the lost footage would have recorded the cars and other vehicles coming and going from C&W. *See id*. at 137, 80:10-25. Importantly, Kindryn confirmed that the footage would have shown that Calvin and Belinda Wells did not engage in any conduct alleged within the July and October 2023 Indictments. *See id*.

10

at 166–67, ¶ 9 (Kindryn Wells' Affidavit). While Mulholland pushed Kindryn to admit she did not really know what was on the footage, she confirmed that she watched these cameras regularly and that cameras were operational the day of the seizure. *See id*. at 145, 88:25-90:11.

40.     The lead investigator from the Baker County Sheriff's Office ("BCSO"), Mr. Charles Griffin, also testified at the hearing. Mr. Griffin testified that he was involved in the investigation into Calvin and Belinda Wells, and that he sought, obtained, and executed the search warrant. *See id*. at 67, 10:3-13. Mr. Griffin stated that he did in fact seize a video recording box from C&W. *See id*. at 67–68, 10:21-11:9. Mr. Griffin testified that he placed the recording device into his truck and transported it to the Sheriff's office. *See id*. at 68–69, 11:21-12:4.

41.     Mr. Griffin further stated that normal operating procedure is to store all evidence in a secure location so that evidence is neither lost nor destroyed. *See id*. at 69–70, 12:25-13:5. But, in this instance, Mr. Griffin placed the video system in an unlocked conference room at the Sheriff's office. *See id*. at 69, 12:6-13. Mr. Griffin testified that he seized the video system as evidence in this case, and that he thought it could be important evidence in the prosecution. *See id*. at 69, 12:14-20. As Mr. Griffin reviewed other evidence in the case, he became less interested in the video system and left it unsecured at the Sheriff's Office. *See id*. at 69, 12:19-24.

Mr. Griffin testified that he has "no clue" where the video recording system is currently located. 70, 13:6-9.

42.    Mr. Griffin also testified that he was aware of the pending civil asset forfeiture cases involving Calvin and Belinda Wells during this time period and had conversations with Mr. Quinn about the evidence they had seized. *See id*. at 71, 14:2-20. Mr. Griffin testified that he seized the video system because he believed at the time of seizure that it was evidence of the crimes they were investigating. *See id*. at 73, 16:4-7. Mr. Griffin admitted that the video evidence that was lost could have very well contained exculpatory evidence in favor of Calvin and Belinda Wells. *See id*. at 73, 16:8-14.

43.    While Mr. Griffin attempted to claim that the system was not operating at the time it was seized, he nonetheless still admitted that he "did not recall" how the system actually worked, that "it's been years" since he seized the system (*id*. at 89, 32:17-33:10), and that he did not ever attempt to watch what was on the recording device. Mr. Griffin stated that the BCSO was still in the possession of the video system when he left in 2023, and that it had to have been lost or destroyed after this date. *See id*. at 73, 16:8-14.

44.    Several grand jurors also testified at the February 12 hearing, including Ms. Brenna Parker—a witness called by the State at the Hearing. Ms. Parker testified that she was a member of the grand jury that issued the July 2023 Indictment. *See*

*id*. at 147, 90:22-5. She testified that she was the individual that tallied the votes for the Indictments. *See id*. at 148, 91:6-25. Importantly, Ms. Parker testified that the grand jury voted on all charges as to both Calvin and Belinda Wells at the same time via one single vote in July 2023. *See id*. at 150–51, 93:23-94:1. Ms. Parker confirmed this again when asked by co-counsel. *See id*. at 152–53, 95:25-96:6. Shockingly, Ms. Parker admitted that she did not believe she had ever even seen the actual indictment, and only recalled being shown the cover page attached to it. *See id*. at 153–54, 96:18-97:14.

45.     Ms. Parker further testified that the grand jury in this October proceeding voted on all charges against both Calvin and Belinda Wells in one single vote here, as well. *See id*. at 153, at 96:7-12. This testimony was corroborated by a second grand juror, Ms. Jody Musgrove, who also served in this second grand jury. *See id*. at 100, 43:15-25. Ms. Musgrove corroborated the statements made by Ms. Parker that all of the charges in the October 2023 Indictment made against Calvin and Belinda Wells were voted on all at once. *See id*. at 113, 56:22-57:3.

46.     Hearing testimony also showed that there was no relevant or competent evidence presented to support the Indictments. For example, the July 2023 Indictment (Counts II-VI in October 2023 indictment) charged Calvin and Belinda Wells with "failure to maintain a legible record of a purchase transaction" for appliances, iron, and mixed steel. *See* **Exs. A** and **B**. However, Ms. Musgrove stated

13

there was no evidence, testimonial or otherwise, regarding appliances. *See* **Ex. G** at 122, 65:8-11. She also said there was no evidence regarding iron (*see id*. at 123, 65:12-16) or mixed steel. *See id*. at 122–23, 65:17-66:6. Ms. Parker—the State's own witness—fully corroborated this testimony. She stated that she did not recall ***any*** evidence being presented to the grand jury regarding any appliances (*see id*. at 152, 95:14-18); iron (*see id*. at 152, 95:19-21); or any other metals (*see id*. at 152, 95:22-24).

47.    As to the "Chop-Shop" count (Count I in the October 2023 Indictment), the State alleged that Calvin and Belinda Wells "did knowingly and willingly operate a chop shop" and that they failed "to maintain record of purchase of said vehicles and report the purchase of said vehicles." *See* **Ex. B**. While Mr. Griffin apparently told the grand jury that Calvin and Belinda Wells were stealing cars (*see* **Ex. G** at 112, 55:1-10), Mulholland never charged them with doing so. *See* **Ex. B**. Indeed, Ms. Musgrove stated that she did not even know what a chop shop was. *See* **Ex. G** at 124, 67:3-12. Ms. Parker corroborated this testimony and also did not recall any competent testimony regarding stolen vehicles or a chop shop. *See id*. at 151–52, 94:23-95:13.

48.    Mulholland called Mr. Griffin, who testified that he was the only presenter of "evidence" to the grand jury. *See id*. at 74, 92, 17:20-23; 35:11-12. Mr. Griffin testified that he could not name what specific appliance the indictment

14

was referring to. *See id.* at 76, 19:21-20:2. He also explained that he only identified Calvin and Belinda Wells to the grand jury as owners of C&W Recycling, and that he did not present evidence regarding them specifically. *See id.* at 81, 24:7-18. When asked specifically whether he presented evidence to the grand jury regarding what specific scrap metal was taken by Calvin Wells in Counts I-VI, Mr. Griffin said "I did not." *See id.* at 81, 24:19-21.

49.    Similarly, Mr. Griffin testified that he did not testify to the grand jury regarding what specifically Belinda Wells did as alleged in the Indictments. While Mr. Griffin did state that he provided evidence that purchases of various metals were not being uploaded to "LeadsOnline," he also admitted that there were no allegations against Calvin and Belinda Wells for failure to upload documents to this database and that it had nothing to do with the grand jury proceedings. *See id.* at 96, 39:3-25. Finally, and most shockingly, Mr. Griffin admitted that he never told the grand jury who committed any of the actual acts as alleged in the July and October 2023 Indictments. *See id.* at 82–83, 25:24-26:5.

**F.    The April 2024 Indictment**

50.    On April 9, 2024—less than a month after the February hearing and with the July and October 2023 Indictments still pending—a Baker County grand jury issued a six-count indictment against Calvin, Belinda, and Kindryn Wells (the "April 2024 Indictment"). **Ex. G.**

51.   The April 2024 Indictment is materially identical to the October 2023 Indictment, except that it also charges Kindryn Wells with committing the same offenses as her parents. *See id*.

52.   Upon information and belief, Mulholland did not conduct any further investigation into Calvin, Belinda, or Kindryn Wells between the February 2024 hearing and April 2024 Indictment.

53.   Instead, upon information and belief, Mulholland urged the grand jury to indict Kindryn Wells based solely on her testimony during the February 2024 hearing.

54.   Indeed, the only testimony before the grand jury came from Mulholland himself and Griffin, who is now employed by the City of Bainbridge Public Safety Department, and presumably cannot investigate crimes under Mr. Mulholland's direction.

55.   Furthermore, upon information and belief, Mulholland urged the grand jury to indict Calvin and Belinda Wells for a third time based on (i) their numerous filings seeking dismissal of the July and October 2023 Indictments and (ii) the testimony they elicited from Kindryn, Mr. Griffin, and the prior grand jurors.

56.   In other words, Mulholland pursued the April 2024 Indictment solely to retaliate against Calvin, Belinda, or Kindryn Wells. Upon information and belief, Mulholland would never have pursued the April 2024 Indictment but for the conduct

16

of Calvin, Belinda, or Kindryn Wells at (and leading up to) the February 2024 hearing.

57. The April 2024 Indictment has chilled Plaintiffs from speaking further in terms of court filings and testimony. They credibly fear reprisal from Mulholland if they mount any further defense.

58. The April 2024 Indictment would chill any reasonable person from speaking, as well.

59. Further evidencing his retaliatory intent, Mulholland seeks to hold Kindryn Wells without bond in Baker County Jail.

**G. The Notice of Retaliatory Prosecution**

60. Immediately upon receiving the April 2024 Indictment, Plaintiffs notified the Baker County Superior Court and Mulholland that the prosecution was brought in bad faith and solely to retaliate against and harass them. **Ex. I**.

61. Mulholland has refused to respond and the Baker County Superior Court has not acted. All three Indictments and the numerous filings remain pending. Plaintiffs have no expectation of any relief in State Court.

## V.   CLAIMS FOR RELIEF

### <u>COUNT I</u>

### 28 U.S.C. §§ 2201, 2202—Declaratory and Injunctive Relief (Against All Defendants)

62.   Plaintiffs reallege and incorporate by reference the allegations in Paragraphs 1 through 61 of this complaint, as if fully stated herein.

63.   28 U.S.C. § 2201(a) provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

64.   Courts must liberally construe § 2201(a) to attain the objectives of the declaratory remedy, namely, to minimize the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting for adversary to begin an action after damages accrue.

65.   Plaintiffs are entitled to declaratory relief under § 2201(a) because, as demonstrated below, Mulholland violated several of their rights secured by the Federal Constitution.

66.   Plaintiffs seek a declaration that Mulholland's Indictments were (i) retaliatory, (ii) bad faith, and (iii) intended to harass and violate their rights under the First and Fourth Amendment to the Federal Constitution.

18

67.     28 U.S.C. § 2202 authorizes "[f]urther necessary or proper relief based on a declaratory judgment or decree."

68.     Federal courts can enforce a declaratory judgment through an injunction issued pursuant to § 2202.

69.     Plaintiffs are entitled to injunctive relief pursuant to § 2202 because the deprivation of constitutional rights, as described in detail below, unquestionably constitutes irreparable injury.

70.     The April 2024 Indictment, if pursued in a manner that violates the First and Fourteenth Amendments, would by definition deprive Plaintiffs of their constitutional rights secured by those provisions.

71.     Monetary damages are inadequate to compensate Plaintiffs for the injuries they have endured and continue to suffer.

72.     Injunctive relief would serve the public interest and properly balance the equities because it is always in the public interest to prevent the violation of a plaintiff's constitutional rights.

73.     As such, Plaintiffs are entitled to (a) a temporary restraining order preventing Mulholland from prosecuting them, (b) a preliminary injunction to the same effect pending trial on Plaintiffs' claims, (c) a permanent injunction forbidding Mulholland from indicting Plaintiffs again, and (d) a declaration declaring that

Mulholland violated their rights under the First and Fourteenth Amendments by pursuing the April 2024 Indictment.

## **COUNT II**

### **42 U.S.C. § 1983—First and Fourteenth Amendments (Retaliation Claim against Mulholland in his personal and official capacities)**

74.   Plaintiffs reallege and incorporate by reference the allegations in Paragraphs 1 through 73 of this complaint, as if fully stated herein.

75.   The First Amendment of the United States Constitution guarantees freedom of speech and the right to petition the government for redress of grievances.

76.   Filing motions and briefs in an ongoing criminal prosecution is activity protected by the First Amendment.

77.   Voluntarily testifying during a hearing in an ongoing criminal prosecution is activity protected by the First Amendment.

78.   These First Amendment guarantees are incorporated to the states through the Fourteenth Amendment.

79.   A defendant violates the First Amendment if (i) the plaintiff was engaged in constitutionally protected activity, and (ii) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (iii) the defendant's adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct.

80.   With respect to the July and October 2023 Indictments, Calvin and Belinda Wells filed (i) a Joint & General Special Demurrer to the Indictments, (ii) a Supplemental Brief in Support of the Joint & General Special Demurrer, (iii) a Motion to Dismiss the Indictments Due to Spoliation of Evidence, and (iv) a Plea In Bar and Motion to Quash the Indictments. *See* **Exs. C–F**.

81.   Those filings constitute protected speech and petitions to the government for redress of grievances.

82.   Kindryn Wells testified during a February 12, 2024 hearing to support her parents' motion to dismiss for spoliation.

83.   That testimony constitutes protected speech.

84.   Using his authority under color of state law, Mulholland deprived Plaintiffs of their First Amendment rights by retaliating against them for exercising those rights.

85.   Mulholland specifically retaliated against Plaintiffs by indicting Calvin and Belinda Wells for a third time and Kindryn Wells for the first time on April 9, 2024, shortly after the February 2024 hearing where she testified.

86.   The April 2024 Indictment was a deliberate part of Mulholland's official policy and custom of retaliation.

87.   Mulholland is a policymaker, and his decisions and actions described in this complaint represent official policy of the South Georgia Judicial Circuit and

Baker County. Alternatively, as policymakers supervising and directing prosecutors within the South Georgia Judicial Circuit and Baker County, Mulholland ratified the Indictments and prosecutions as official policy.

88. Mulholland's official policy and custom of retaliation is independently unconstitutional. But even further, Mulholland intended to intimidate Plaintiffs from taking any further action to defend themselves.

89. Mulholland's retaliatory actions would chill a person of ordinary firmness from exercising their First Amendment rights as incorporated by the Fourteenth Amendment.

90. Indeed, Plaintiffs now fear taking any further action to defend themselves in Georgia State court. That constitutes a direct harm attributable to Mulholland's retaliatory animus and actions.

91. Kindryn Wells, for example, credibly fears further charges if she elects to testify at her parents' trial or to file any demurrers or motions to dismiss the charges against her in Georgia State Court.

92. Calvin and Belinda Wells credibly fear calling Kindryn as a witness at their trial.

93. Calvin and Belinda Wells also credibly fear filing any further motions or seeking an interlocutory appeal in Georgia State Court.

94.    All of these actions are protected by the Federal Constitution, yet Plaintiffs are chilled from exercising those rights while Mulholland dangles threats of further charges and future prosecutions against them.

95.    The actions of Mulholland are attributable to Baker County and the South Georgia Judicial Circuit. He is a policymaker with final authority, or was delegated final authority, and made a deliberate choice to adopt a course of retaliatory action against Plaintiffs.

96.    Mulholland's retaliatory policy then was the moving force behind his violation of Plaintiffs' First Amendment rights.

97.    Mulholland did not have probable cause to criminally charge any Plaintiff with any crime.

98.    The facts also demonstrate that the criminal charges against Plaintiffs are sham charges, regardless of attempts to fabricate probable cause. Thus, even if probable cause existed, the application of laws that are never (or rarely) enforced to Plaintiffs is insufficient to outweigh the retaliatory animus illustrated by the surrounding circumstances. The facts cannot objectively justify the Indictments.

99.    It is clearly established that criminally charging or indicting any individual in retaliation for that individual's speech and petitions directed toward the government violates the First Amendment. Every reasonable government official would have had a fair warning that doing so is unconstitutional.

23

100.   The constitutional violations at issue here were obvious to every reasonable government official, including Mulholland.

101.   Had it not been for the retaliatory animus and the content of Plaintiffs' speech and petitions, Mulholland would have never indicted Calvin and Belinda Wells for a third time or Kindryn Wells for the first time.

102.   Although three Indictments are actively pending in Georgia state court, Mulholland's retaliatory conduct alleged above both permits and justifies this Court not only to maintain jurisdiction over Plaintiffs' claims but also to enjoin Mulholland from pursuing the pending Indictments.

103.   For these violations of their First Amendment rights, Plaintiffs seek temporary, preliminary, and permanent injunctive relief against Mulholland to enjoin him from retaliating against them any further, such as by pursuing any pending Indictments against them.

104.   Plaintiffs further seek declaratory relief along with nominal and compensatory damages against Mulholland in his personal and official capacities.

### COUNT III

### 42 U.S.C. § 1988—Attorneys' Fees

105.   Plaintiffs reallege and incorporate by reference the allegations in Paragraphs 1 through 104 of this complaint, as if fully stated herein.

106. 42 U.S.C. § 1988 authorizes federal courts to award "a reasonable attorney's fee as part of the costs" whenever a plaintiff prevails on a claim brought pursuant to § 1983.

107. Plaintiffs have asserted a claim pursuant to § 1983.

108. Should any Plaintiff prevail on any claim under § 1983, the prevailing Plaintiff(s) request that Court order Mulholland to pay their reasonable court costs and attorneys' fees, to be proven in an amount at a later date.

109. Should Plaintiffs retain an expert witness for any reason, Plaintiffs also request the Court to award expert fees as part of any attorneys' fees.

## COUNT IV

**Breach of Implied Contract of Bailment**
**(Calvin and Belinda Wells against Muholland)**

110. Mulholland directed law enforcement officers to seize a video system owned by Calvin and Belinda Wells from their business, C&W Recycling, on December 14, 2021.

111. Mulholland became the bailee of the video system at that point.

112. Mulholland intended to use the video system as evidence against Calvin and Belinda Wells in a civil asst forfeiture proceeding that Mulholland has since dismissed.

113. Former investigator Charles Griffin testified that he placed the video system in a conference room in Mulholland's office.

25

114.    Mulholland has exercised actual control of the video system, exclusive and independent of all other persons including Calvin and Belinda Wells, since December 14, 2021.

115.    Mulholland even agreed to return the system if Calvin and Belinda Wells agreed to dismiss their appeal in the asset forfeiture action, which they did.

116.    That agreement to return the video system created a second bailment in the sense that Mulholland impliedly agreed to hold the video system for a defined period: until Calvin and Belinda Wells dismissed their appeal. Nonetheless, Mulholland has refused repeated requests to return the video system even though Calvin and Belinda Wells dismissed their appeal as promised.

117.    Based upon testimony by Griffin, Mulholland (or an agent under his control) has misplaced or destroyed the video system in violation of his duties as a bailee.

118.    Upon information and belief, Mulholland has no intention of ever returning the video system, even once the criminal action has concluded.

119.    Mulholland's failure to exercise due care to retain the video system, of which he was the bailee, constitutes a breach of the parties' implied contract for bailment.

26

## PRAYER & REQUEST FOR RELIEF

Plaintiffs respectfully request:

A. Orders temporarily, preliminarily, and ultimately permanently enjoining Mulholland from prosecuting them based on the three Indictments;

B. Declaratory relief stating that Mulholland violated their rights under the First and Fourteenth Amendments.

C. An award of compensatory and punitive money damages against Mulholland for the injuries Plaintiffs suffered due to Mulholland's violations of their constitutional rights, including but not limited expenses incurred as a result of this retaliatory criminal prosecution,

D. An award of $1 in nominal damages against Mulholland in his personal and official capacities for violating Plaintiffs' constitutional rights;

F. An award of reasonable attorneys' fees, costs, and expenses under 42 U.S.C. § 1988; and

G. Any further legal and equitable relief that the Court deems just and proper.

Respectfully submitted, April 25, 2024.

/s/ Christopher S. Anulewicz
Christopher S. Anulewicz
Georgia Bar No. 020914
Jonathan R. DeLuca
Georgia Bar No. 228413
Wayne R. Beckermann
Georgia Bar No. 747995

**BRADLEY ARANT BOULT CUMMINGS LLP**
Promenade Tower
1230 Peachtree Street NE
Atlanta, GA 30309
E-mail: canulewicz@bradley.com
         jdeluca@bradley.com
         wbeckermann@bradley.com
Telephone: (404) 868-2030
Facsimile: (404) 868-2010

*Attorneys for Plaintiff Calvin Wells*


*/s/ Eric L. Gay*
Eric L. Gay
Georgia Bar No 852357
**Eric L. Gay, LLC**
205 West Water Street
Bainbridge, GA 39817
Email: Egay@sowegalaw.com

*Attorney for Plaintiff Belinda Anglon Wells*

*/s/ Billy Shingler*
William M. Shingler, Jr.
Georgia Bar No. 193015
**SHINGLER LAW, LLC**
226 Cherry St.
Donalsonville, GA 39845
Email: ShinglerLaw23@gmail.com
Telephone: (229) 524-1225

*Attorney for Plaintiff Kindryn Marie Wells*

28

## <u>CERTIFICATE OF SERVICE AND COMPLIANCE</u>

On April 25, 2024, I filed the foregoing Complaint with the clerk of court for the U.S. District Court, Middle District of Georgia, Albany Division. I hereby certify that I have served the document on all parties and counsel of record in a manner authorized by Federal Rules of Civil Procedure 5(b)(2). I further certify that the foregoing Complaint substantially complies with Local Rules adopted by the Middle District of Georgia.

*/s/ Christopher S. Anulewicz*
Christopher S. Anulewicz
Georgia Bar No. 020914
**BRADLEY ARANT BOULT CUMMINGS LLP**
Promenade Tower
1230 Peachtree Street NE
Atlanta, GA 30309
E-mail: canulewicz@bradley.com
Telephone: (404) 868-2030
Facsimile: (404) 868-2010

*Attorney for Plaintiff Calvin Wells*

29