IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| **CALVIN DEWAYNE WELLS,** **BELINDA ANGLON WELLS, and** **KINDRYN MARIE WELLS**, | : : : : |
| **Plaintiffs**, | : **CASE NO: 1:24-cv-55-WLS** |
| v. | : : : |
| **JOE MULHOLLAND**, *in personal capacity and in his official capacity as District Attorney for the South Georgia Judicial Circuit*, | : : : : : : |
| **Defendant**. | : |

## ORDER

Before the Court is Plaintiffs' Rule 65 Motion for Temporary Restraining Order and Preliminary Injunctive Relief (Doc. 2), as amended (Doc. 13) ("TRO Motion"), as well as Defendant Joe Mulholland's ("Mulholland") response in opposition thereto (Doc. 15) ("Response"). On May 21, 2024, the Court held an evidentiary hearing on this matter. Upon full review and consideration of the record, motion, response, testimony of witnesses, arguments of counsel, and for the reasons set forth below, the Court **DENIES** the TRO Motion.

### I. BACKGROUND & SUMMARY OF COMPLAINT

Plaintiffs assert that on December 14, 2021, Charles Griffin, of the Baker County Sheriff's Office, and other law enforcement officers executed a search warrant and seized property located at 825 Patmos Milford Hwy., Arlington, Georgia. The seized property included various electronic devices and a video recording system. (Doc. 12 ¶ 16).

On July 26, 2023, Mulholland, the District Attorney for the South Georgia Judicial Circuit, obtained a grand jury indictment ("July 2023 Indictment") charging Calvin and Belinda Wells with the unlawful purchase of regulated metals and that while operating as secondary

1

metal recyclers, Calvin and Belinda Wells failed to maintain legible records of their purchases of large appliances, iron, and mixed steels from unidentified sellers. The July 2023 Indictment includes five Counts alleging the offenses occurred between November 18, 2021, and December 19, 2021. (Doc. 12 ¶ 1, Ex. A). The Plaintiffs contend the July 2023 Indictment is deficient because it fails to allege any elements of a crime and does not cite any statutes. (*Id.* ¶¶ 19–20).

A second indictment, handed down by the grand jury on October 2, 2023 ("October 2023 Indictment"), included the same five counts as the July 2023 Indictment, but added as Count I, a charge that between January 1, 2020, and December 13, 2021, Calvin and Belinda Wells "knowingly and willfully operate[d] a chop shop." (*Id.* ¶ 2, Ex. B). The Plaintiffs contest the validity of the October 2023 Indictment. (*Id.* ¶¶ 25–29).

On November 27, 2023, Calvin and Belinda Wells contested the July 2023 and October 2023 Indictments in the Superior Court of Baker County, Georgia, Case Nos. 2023R-017 & 2023R-019 ("State Court Action"). They filed joint general and special demurrers, and also moved to dismiss the July 2023 and October 2023 Indictments alleging that Mulholland had lost the personal property, and particularly the video recording system, that was seized on December 14, 2021. Plaintiffs contend that the video recording system recorded sixty-days' worth of footage, and that such recording would have contained exculpatory footage. (*Id.* ¶¶ 31–34).

On February 2, 2024, Calvin and Belinda Wells filed a plea in bar and motion to quash the October 2023 Indictment alleging the State failed to present competent evidence to the grand jury and improper voting procedures were used to obtain the July 2023 and October 2023 Indictments. (*Id.* ¶¶ 35–36, Ex. F).

On February 12, 2024, the Superior Court of Baker County held an evidentiary hearing on all of Plaintiffs' motions, and on April 5, 2024, Calvin and Belinda Wells filed a post-hearing brief in the State Court Action. (*Id.* ¶ 3, Ex. G).

On April 9, 2024, Mulholland filed a third indictment ("April 2024 Indictment") against Calvin and Belinda Wells that is substantially similar to the July 2023 and October 2023 Indictments, except that Mulholland included Calvin and Belinda Wells's daughter, Kindryn

2

Wells, as a co-defendant in all six counts of the April 2024 Indictment. (*Id.* ¶ 4, Ex. H). Plaintiffs contest the validity of the April 2024 Indictment. (*Id.* ¶¶ 51–61).

On April 25, 2024, Plaintiffs Calvin Wells, Belinda Wells, and Kindryn Wells (collectively the "Wells" or "Plaintiffs"), filed their original Complaint for Declaratory and Injunctive Relief and Damages (Doc. 1) and their original Rule 65 Motion for Temporary Restraining Order and Preliminary Injunctive Relief (Doc. 2). On May 10, 2024, Plaintiffs filed their First Amended Complaint for Declaratory and Injunctive Relief and Damages (Doc. 12) ("Complaint") and the TRO Motion currently before the Court. Plaintiffs' Complaint contains six claims for relief. In Count I, Plaintiffs seek declaratory and injunctive relief against the Defendants, which raises the only issue currently before this Court. Therein, Plaintiffs request that the Court find that the July 2023, October 2023, and April 2024 Indictments (collectively "Indictments"): (i) are retaliatory; (ii) were brought in bad faith; (iii) were intended to harass and intimidate Plaintiffs and their witnesses; and (iv) violate Plaintiffs' rights under the First, Sixth, and Fourteenth Amendments to the United States Constitution.[1]

Defendant's Response was filed May 20, 2024. During the May 21, 2024 hearing, Plaintiffs asserted, through counsel, that all three Indictments were obtained by Mulholland in bad faith. Plaintiffs further argued that the April 2024 Indictment was obtained by Mulholland in bad faith and to harass and retaliate against the Plaintiffs for (i) Calvin and Belinda contesting the validity of the Indictments; (ii) Calvin and Belinda moving to dismiss the July 2023 and October 2023 Indictments for spoilation of evidence; and (iii) Kindryn Wells testifying on behalf of Calvin and Belinda at the February 12, 2024 hearing. The Defendant denies any of the Indictments were obtained in bad faith or to harass or retaliate against the Plaintiffs. At the May 21, 2024 hearing, Plaintiffs presented one witness, Charles Griffin, and Defendant Mulholland testified on behalf of himself. As noted above, Mr. Griffin was one of the officers who executed the search warrant on December 14, 2021. He was also the investigating officer who obtained the search warrant and he testified before at least one of the grand juries that handed down the Indictments.

---

[1] The remaining counts are: Count II: § 1983 First and Fourteenth Amendments Retaliation Claim; Count III: § 1983 Sixth and Fourteenth Amendments; Count IV: § 1983 Fourteenth Amendment (Procedural Due Process Claim); Count V: 42 U.S.C. § 1988—Attorney's Fees; and Count VI: Breach of Implied Contract of Bailment.

## II. YOUNGER ABSTENTION

### A. LAW

Before the Court gets to the question of whether Plaintiffs are entitled to a preliminary injunction or temporary restraining order ("TRO") against Defendant, Plaintiffs must get over the hurdle of the *Younger* abstention doctrine which holds that absent extraordinary circumstances, federal courts should not enjoin pending state criminal prosecutions. *Younger v. Harris*, 401 U.S. 37 (1971). This is not an easy hurdle to clear. In *Younger*, the Supreme Court noted that "[i]n 1793 an Act unconditionally provided: '(N)or shall a writ of injunction be granted to stay proceedings in any court of a state[.]'" *Id.* at 43 (quoting Act of Mar. 2, 1793, ch. 22, § 5, 1 Stat. 333, 334-35). Since that 1793 Act, flatly prohibiting federal injunctions staying state court proceedings, until 1970, there have been only three statutory exceptions to the *Younger* abstention doctrine and one judicial exception. The statutory exceptions are set out in 28 U.S.C. § 2283,[2] the present-day successor of the 1793 Act. *Id.* The judicial exception applies if "a person about to be prosecuted in a state court can show that he will, if the proceeding in the state court is not enjoined, suffer irreparable damages." *Id.* (citing *Ex parte Young*, 209 U.S. 123, 128 (1908)).

The Supreme Court stated that the primary sources of the policy that federal courts refrain from interfering with state court proceedings are plain: (1) "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief[;]" (2) the policy's "fundamental purpose of restraining equity jurisdiction within narrow limits is . . . important under our Constitution, in order to prevent erosion of the role of the jury and avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted[;]" and (3) "the notion of 'comity,' that is, a proper respect for state functions[.]" *Younger*, 401 U.S. at 43–44.

When a federal court is asked to interfere with a state court criminal prosecution,

> [T]he federal court must consider whether the three factors enumerated in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432

---

[2] 28 U.S.C. § 2283 provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except [1] as expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments."

4

> . . . (1982), are present: First, is the state proceeding "ongoing" at the same time as the federal one? Second, does the state proceeding implicate an "important state interest"? And third, does the state proceeding provide an "adequate opportunity" to raise the federal claim?

*Leonard v. Ala. State Bd. of Pharmacy*, 61 F.4th 902, 908 (11th Cir. 2023) (citation omitted). If these "factors are met, *Younger* abstention is warranted, and the federal court should abstain and allow the state proceeding to go forward." *Id.*

But, courts, including the Eleventh Circuit, have interpreted *Younger* as setting out "three [non-statutory] exceptions to the abstention doctrine [where]: (1) there is evidence of state proceedings motivated by bad faith, (2) irreparable injury would occur, or (3) there is no adequate alternative state forum where the constitutional issues can be raised." *Hughes v. Att'y Gen. of Fla.*, 377 F.3d 1258, 1263 n.6 (11th Cir. 2004) (citing *Younger*, 401 U.S. at 45, 53–54); *see also Leonard*, 61 F.4th at 908.

### B. YOUNGER ABSTENTION APPLIES IN THIS CASE

It is clear that *Younger* applies to this case. First, the State Court Action is still ongoing. On February 12, 2024, the Superior Court held a hearing on the very matters that the Plaintiffs present to this Court for resolution. Plaintiffs filed their post-hearing brief in the State Court Action on April 5, 2024. A mere twenty days later, on April 25, 2024, and without giving the Superior Court the opportunity to rule on the matters before it, the Plaintiffs filed their action in this Court.[3]

The second prong for application of *Younger* abstention—does the state proceeding implicate an "important state interest"—is also satisfied. Prosecuting people allegedly engaging in unlawful activity within its borders is an important interest in any state. *Middlebrooks v. Patterson*, No. 24-CV-00102, 2024 WL 2148741, at *3 (N.D. Ga. Apr. 30, 2024) ("The state criminal proceedings certainly implicate an important state interest in the administration of its criminal law."). Citing *Wilson v. Thompson*, the Plaintiffs argue that a state does not have an interest in prosecuting indictments brought in bad faith. 593 F.2d 1375, 1383 (5th Cir. 1979)

---

[3] Indeed, if the Superior Court had entered a ruling on these matters, the *Rooker-Feldman* Doctrine—which recognizes that federal district courts do not have jurisdiction to act as appellate courts over state court decisions—would preclude this Court from reviewing the Superior Court's decision. *Green v. Jefferson Cnty. Comm'n*, 563 F.3d 1243, 1249 (11th Cir. 2009).

5

("With respect to the interests of the State, it by definition does not have any legitimate interest in pursuing a bad faith prosecution brought to retaliate for or to deter the exercise of constitutionally protected rights."). The Court does not disagree with that principle in general. However, as discussed in detail below, *infra* Part II.C, the Court finds that the Plaintiffs failed to provide anything but conclusory statements and arguments in support of their position that Mulholland acted in bad faith in bringing or pursuing the Indictments. Thus, here, the state does indeed have an interest in prosecuting the Indictments brought against the Plaintiffs.

Finally, the Court finds that the State Court Action provides Plaintiffs with a forum in which Plaintiffs will have an 'adequate opportunity' to raise, and in which they have already raised, their federal claims. In their TRO Motion, the Plaintiffs assert, in part, that they have numerous motions that have been pending for months in the State Court Action which have not been ruled on by the court. Plaintiffs assert that they are "stuck defending themselves before a tribunal that (at best) refuses to consider their arguments at all." (Doc. 13 at 11). Without quantified evidentiary factual support, Plaintiffs then make a leap to assert that the Superior Court Judge is biased and incompetent. (*Id.*)

The Court's review of the February 12, 2024 hearing transcript reflects that the Superior Court Judge conducted the hearing showing equal courtesy to the parties and without the merest hint of bias or incompetence. When pressed at the May 21, 2024 hearing, Plaintiffs' counsel admitted that they had no basis on which to assert the existence of any bias or incompetence on the part of the Superior Court Judge.[4]

In looking at the timeline regarding Plaintiffs' four motions, the Court notes that Calvin and Belinda Wells filed their demurrers and motion to dismiss on November 27, 2023, and filed their plea in bar and motions to quash the Indictments on February 2, 2024. Ten days later, on February 12, 2024, the state court held a hearing on the motions. On April 5, 2024, Plaintiffs filed post-hearing briefs. On April 25, 2024, the Plaintiffs' filed their original TRO Motion (Doc. 2) in this Court. Thus, Plaintiffs essentially assert that the state court's failure to

---

[4] The Court notes the filing of Plaintiff's Second Amended Rule 65 Motion for Temporary Restraining Order and Preliminary Injunctive Relief (Doc. 18) in which Plaintiffs have removed the assertions of bias and incompetency. The Plaintiffs also filed a Post-Hearing Supplemental Brief (Doc. 19). Other than noting the removal of the bias and incompetence assertions, which was discussed at the May 21, 2024 hearing, the Court considers the record on the TRO Motion closed as of the conclusion of the hearing. No additional briefing was authorized or requested.

6

rule on their four motions in this case within twenty days of the matters being fully briefed provides Plaintiffs with a basis to assert that they will not have an adequate opportunity to adjudicate their claims in state court. This position is clearly contrary to the facts and circumstances as shown by the Record.

Accordingly, the Court finds that the *Younger* abstention doctrine is applicable to this case, and the Plaintiffs' case may only proceed if they can show the existence of an exception to application of the doctrine.

### C. NONE OF THE EXCEPTIONS APPLY TO THIS CASE

1. <u>Mulholland did not act in bad faith in obtaining the Indictments</u>.

In considering exceptions to the application of *Younger*, the *Middlebrooks* court, citing Supreme Court, Eleventh Circuit, and Fifth Circuit[5] precedent stated:

> The Court recognized exceptions for bad faith, harassment, or a patently invalid state statute applies. Bad faith in this context generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction. But, bad faith may also be shown where the prosecution was brought for purposes of harassment or in bad faith to deter the exercise of constitutional rights. *To show bad faith, a petitioner must make a "substantial allegation" showing <u>actual</u> bad faith*. The Plaintiff has failed to meet this burden here.

*Middlebrooks*, 2024 WL 2148741, at *3 (emphasis added) (citations and internal quotations omitted). Similarly, Plaintiffs here failed to show actual, or any, bad faith on Mulholland's part.

Plaintiffs strenuously argue that Mulholland obtained the Indictments in bad faith, without any reasonable expectation of obtaining convictions, for the purpose of harassing the Plaintiffs, and in retaliation for Calvin and Belinda Wells's multiple motions contesting the validity of the July 2023 and October 2023 Indictments, and for their motion to dismiss the July 2023 and October 2023 Indictments based on spoilation of evidence. The Plaintiffs contend that the April 2024 Indictment was clearly brought in retaliation for Calvin and Belinda Wells's multiple motions and assertions of spoilation of evidence. And that it was also

---

[5] The United States Court of Appeals for the Eleventh Circuit has adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, as its governing body of precedent. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

brought against Kindryn Wells in retaliation for Kindryn Wells testifying on Calvin and Belinda Wells's behalf at the February 12, 2024 hearing.

Mulholland testified at the May 21, 2024 hearing before this Court, that he had never met the Plaintiffs prior to obtaining the July 2023 Indictment. Plaintiffs do not provide any reason why Mulholand would single them out for retaliation or harassment by filing the July 2023 or October 2023 Indictments. Mr. Griffin conducted the investigation of the Wells. Mulholland testified that he did not, and does not, obtain grand jury indictments on which he does not intend to obtain convictions or on which he does not believe he can obtain convictions. The Court finds the fact that three grand juries handed down the Indictments weighs against a finding that Mulholland prosecuted the Wells with no hope of obtaining a valid conviction. *See Jordan v. Reis*, 169 F. Supp. 2d 664, 669 (S.D. Tex. 2001) ("[A] grand jury found the requisite probable cause to issue an indictment against [plaintiff]; this fact weighs against a determination that [d]efendant prosecuted [plaintiff] with no hope of obtaining a valid conviction.").

Plaintiffs' assertions that Mulholland's indictment of Kindryn Wells was clearly in retaliation for her testimony at the February 12, 2024 hearing, is not evidence. When asked why Kindryn Wells was indicted, Mulholland testified that she had incriminated herself by the testimony she gave at the February 12, 2024 hearing. In particular her testimony that she was responsible for maintaining the paperwork at her parents' business. The July 2023 and October 2023 Indictments alleged, in part, that Calvin and Belinda Wells failed to maintain legible records of their purchases of large appliances, iron, and mixed steels from unidentified sellers. Mulholland testified that when Kindryn Wells testified that she was responsible for and personally maintained those records, she incriminated herself, and that was the reason the April 2024 Indictment was filed. In particular, Kindryn Wells testified that:

> A I did people's loads, I paid them for the loads, got their driver's license, paid them and put the paperwork up, that's about it.
>
> Q What paperwork did you get? You said you got the paperwork, but what are you talking about?
>
> A Like I did their loads, I got their weights, got their driver's license, all of that stuff.
>
> Q So you were personally responsible for getting all the information from the people that sold metal to-to your parent's store?

8

>   A Yes.
>
>   Q Okay. So all the paperwork that was retrieved from—if I'm a—if I'm selling to you and your [sic] my buyer, obviously there at C & W, your responsibility was to take their driver's license and get the loads and all that stuff as to how much, that kind of stuff; is that right?
>
>   A Yes.
>
>   Q And did you keep all the paperwork yourself?
>
>   A Yes. It was in the office.

(Doc. 15–1 ¶ 10 (quoting testimony of Kindryn Wells, Hr'g Tr. 84:21–85:14, Feb. 12, 2024 (Doc. 9-1)).

Finally, with respect to the allegations of spoilation of evidence because of the loss of the video system equipment, the Plaintiffs failed to show that any of the equipment was ever in Mulholland's actual possession or that he ordered its destruction. Mulholland's testimony at the May 21, 2024 hearing was consistent with the sworn Declaration of Joseph Kenneth Mulholland (Doc. 15-1) that he did not "participate[ ] in any search warrant ever conducted by the Baker County Sheriff's Office[,]" and that he does "not house evidence for the Baker County Sheriff's Office." (Doc. 15-1 ¶¶ 16, 17). Further, it is far from clear that there was, or may have been, exculpatory evidence on the video. Mr. Griffin testified that when he seized the DVR system on December 31, 2021, "[i]t wasn't even hooked up when I took it. It was—the power was plugged in, *there was no auxiliary cables coming in or out.*" (Doc. 9-1 at 11:12–14 (emphasis added)). At the February 12, 2024 hearing, Kindryn Wells testified that the equipment was not wireless. (*Id.* at 84:8–15). She also testified that the equipment was recording on the date the search warrants were executed. (*Id.* at 88:2–89:11). Regardless of whether the video system was running and whether it contained exculpatory and incriminating evidence, Plaintiffs have not provided any evidence to show that Mulholland was responsible for the loss of the equipment or any video.

Plaintiffs cite several cases in support of their argument that "while federal injunctions of state criminal prosecutions are not the norm, they are far from unheard of." (Doc. 13 at 11). The Court reviewed those cases and finds that they do not support Plaintiffs' position that Mulholland acted in bad faith or to harass Plaintiffs. Neither do the cases support a finding

9

that Mulholland obtained the Indictments in retaliation for Plaintiffs' filing the motions in the State Court Action or in retaliation for Kindryn Wells testifying on behalf of the Plaintiffs.

Specifically, in *Younger*, the Supreme Court discussed *Dombrowski v. Pfister*, 380 U.S. 479, 85 (1965), as an example of a situation in which defense of a state's criminal prosecution will not assure adequate vindication of constitutional rights and where, if such allegations are true, a plaintiff clearly shows "irreparable damages," and bad faith on the part of the prosecutor. There, state prosecutors were continuing to threaten the plaintiffs with prosecution even after plaintiffs had successfully quashed prior search warrants, successfully had warrants vacated for lack of probable cause, and successfully suppressed seized evidence. The Supreme Court, noting the limited circumstances under which an injunction could be justified, stated:

> [T]he threats to enforce the statutes against appellants are not made with any expectation of securing valid convictions, but rather are part of a plan to employ arrests, seizures, and threats of prosecution under color of the statutes to harass appellants and discourage them and their supporters from asserting and attempting to vindicate the constitutional rights of Negro citizens of Louisiana.

*Younger*, 401 U.S. at 48 (quoting *Dombrowski*, 380 U.S. at 85). The facts in *Dombrowski* are egregious. The *Dombrowski* plaintiffs had successfully quashed or had warrants vacated and successfully suppressed seized evidence. Yet, the prosecutors were still attempting to prosecute the plaintiffs. Plaintiffs here have not even waited for a ruling from the Superior Court Judge, whom they admitted at the May 21, 2024 hearing was competent and unbiased, contrary to their assertions in the initial TRO Motion.

While Plaintiffs assert that the Indictments are defective and that the significance of the alleged criminal activity is trivial, they do not assert that Mulholland lacks any basis for prosecuting Plaintiffs. Instead, in attempting to support their assertions that the Indictments were filed in bad faith, Plaintiffs state that "bad faith or harassment can take the form, *as alleged in this action, of a prosecution undertaken under a valid statute* for constitutionally impermissible reasons." (Doc. 13 at 8-9 (citation omitted)). Plaintiffs have not, however, met their burden to show that the Indictments were filed in bad faith and without any proper prosecutorial basis.[6]

---

[6] This is separate and distinct from whether the Indictments may be legally deficient or procedurally improper on some other ground. And Plaintiffs have, in fact, placed several such alleged legal and procedural deficiencies before the Superior Court.

10

In *Shaw v. Garrison*, 467 F.2d 113 (5th Cir. 1972), the Fifth Circuit affirmed the district court's decision granting plaintiff an injunction on facts showing bad faith prosecution; *i.e.*, (a) the prosecutor charged Shaw with perjury after Shaw was found not guilty of conspiracy to assassinate President Kennedy; (b) the New Orleans prosecutor's jurisdiction to investigate President Kennedy's assassination was questionable; (c) the resignation of one of the prosecutor's investigators on the belief that the investigation of Shaw was a fraudulent, criminal act itself; (d) the testimony of the state's star witness was obtained by using sodium pentothal and hypnosis;  (e) the prosecutor was funded by private interests; (f) the prosecutor had a significant financial interest in the continued prosecution of Shaw in the form of book contracts; and (g) the prosecutor made sure reporters, newsmen, photographers, and television camera crews were present at Shaw's arrest which was done as Shaw was exiting the prosecutor's office after voluntarily appearing at the office. Plaintiffs cannot reasonably assert that the facts of their case come anywhere close to those in *Shaw*.

Plaintiffs are correct that *Younger* abstention was not applied in *Ramelli v. Zahn*, No. 20-cv-1482, 2020 WL 3971279, at *8 (E.D. La. July 14, 2020), a case in which the city attorney brought littering charges against the plaintiff. Again, when all the facts in *Ramelli* are presented, *Ramelli* is also clearly distinguishable from this case. In *Ramelli*, the city attorney brought **22,000** littering charges against plaintiff only after the plaintiff's company (a contractor for the city's trash collection) had filed various claims against the city, and there was clear evidence of a retaliatory motive in an email from the city attorney to plaintiff's attorney stating that the litter violations arose from plaintiff's "failure to do anything concerning [the issue between the parties], *except for filing for a TRO in New Orleans.*" Id.

*Jordan*, 169 F. Supp. 2d 664,[7] and *Pettway v. Marshall*, No. 19-CV-1073, 2019 WL 3752475, at *4 (N.D. Ala. Aug. 8, 2019), are distinguishable because neither case involved a ruling on the merits of the proposed injunction. Rather, both cases were before their respective

---

[7] In *Jordan*, plaintiff filed an action to enjoin criminal prosecution alleging that the criminal case was filed in retaliation for plaintiff's filing an employment discrimination action. The court found that the plaintiff's action barely survived defendant's motion to dismiss because of plaintiff's allegations, which the court is obligated to accept as true, that county attorneys had offered to dismiss the criminal action if plaintiff dismissed his employment discrimination action. The court specifically "reserve[d] judgment on the issue of granting injunctive or other equitable relief pending an evidentiary or other appropriate hearing on matters specifically relating to [p]laintiff's allegations of bad faith prosecution." *Id.* at 670.

11

courts on motions to dismiss, and the courts merely held that the plaintiffs had raised sufficient allegations, albeit barely in the *Jordan* case, to survive the motions to dismiss. Plaintiffs' other cases are likewise distinguishable.[8]

Accordingly, Plaintiffs fail to show that the any of the Indictments were obtained by Mulholland in bad faith or for purposes of harassment or retaliation.

    2. <u>Plaintiffs have not shown that they will suffer irreparable harm</u>.

While a federal court may interfere in a state prosecution to prevent irreparable damages, in reviewing its cases on this issue, the Supreme Court stated,

> [T]he Court also made clear that in view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is *both great and immediate*. Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution.

*Younger*, 401 U.S. at 46 (emphasis added) (citations and internal quotations omitted).

The Plaintiffs, citing *Fitzgerald v. Peek*, 636 F.2d 943 (5th Cir. 1981), rely on their argument that Mulholland obtained the Indictments in bad faith to show that they will suffer irreparable harm absent an injunction. In *Fitzgerald*, the Fifth Circuit stated:

---

[8] In *Warren v. DeSantis*, 631 F. Supp. 3d 1188, 1200–02 (N.D. Fla. 2022), the court found that *Younger* abstention was not applicable to the case—not because that plaintiff had defeated applicability of the doctrine on the bases of bad faith, harassment, or retaliation—but because the defendant failed to show that the case met the three criteria set out in *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982), that were necessary to apply the doctrine in the first place. *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 86-88 (5th Cir. 1992), can best be described as Dallas police officers run amuck. Again the facts in *Nobby Lobby* reflect more egregious actions taken by police officers in conducting multiple raids of adult book stores, seizures of sexually explicit videos and equipment, indicting low level employees that they knew had limited means to litigate constitutional issues, and knowledge of the officials of the strong possibility that the seizures were unconstitutional. In *Netflix, Inc. v. Babin*, 88 F.4th 1080 (5th Cir. 2023), the Fifth Circuit looked at the timeline of the prosecutor's actions in charging Netflix with advertising and promoting child pornography for streaming the controversial French film *Cuties*. The prosecutor obtained the indictment, issued a press release about the unprecedented prosecution, and then let the case sit idle for a year without any evidence of effort to move the case along. Netflix filed a habeas petition which caused "a burst of prosecutorial alacrity[,]" *id.* at 1092, and the filing of four new indictments charging Netflix with a more severe offense of promoting sexual conduct by a child younger than 18 years of age. The Fifth Circuit looked at the timeline and prosecutor's actions in securing the indictments against Netflix by showing only "curated clips and images of the most provocative scenes." *Id.* at 1093. Only one of the scenes contained nudity—a bare breast—which the prosecutor was aware was that of an adult actress and not a child.

12

> It is well established that a showing of bad faith prosecution presents a narrow exception to the doctrine of abstention which will justify federal interference in a pending state court criminal proceeding. A showing of bad faith or harassment is equivalent to a showing of irreparable injury under *Younger*, and irreparable injury independent of the bad faith prosecution need not be established.

*Id.* at 944 (citations omitted).

As discussed in detail, *supra* Part II.C.1, the Plaintiffs have not shown actual bad faith on Mulholland's part in obtaining and/or prosecuting the Indictments. Thus, Plaintiffs fail to establish that they will suffer irreparable harm, let alone *great and immediate* irreparable harm, if the Court abstains.

### 3. Plaintiffs have an adequate state forum.

> The burden is on the plaintiff to show that the state forum is not adequate to adjudicate their federal defenses. Further, when the plaintiff "has not attempted to present their federal claims in related state-court proceedings, a federal court should assume" that the state proceedings are adequate, except upon "unambiguous authority to the contrary."

*Leonard*, 61 F.4th at 908 (alteration adopted) (citation omitted) (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987)). The Plaintiffs' attempt to have this Court preempt the Superior Court Judge from issuing a decision on the motions pending before her is effectively the equivalent of not presenting their federal claims in the State Court Action. In addition, as noted above, Plaintiffs concede that their assertions of bias and incompetence on the part of the Superior Court Judge are unfounded. Finally, this Court has found that Plaintiffs' allegations of bad faith on Mulholland's part are unsupported. As such, Plaintiffs' argument that their constitutional rights cannot be adequately adjudicated in the State Court Action are unsupported. The Superior Court clearly has jurisdiction and capacity to hear such claims. Accordingly, Plaintiffs fail to show that the State Court Action will not provide them with an adequate forum where their constitutional issues can be raised.

The Court finds that *Younger* abstention is warranted and this case does not present the "extraordinary circumstances" that would justify federal intervention in a state criminal proceeding where the state court is adequate to hear, and has already heard, Plaintiffs' claims.

D. CONCLUSION

The Plaintiffs' Rule 65 Motion for Temporary Restraining Order and Preliminary Injunctive Relief (Doc. 2), as amended (Doc. 13) is **DENIED**.

**SO ORDERED**, this 9th day of July 2024.

/s/W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE
UNITED STATES DISTRICT COURT**